Good morning, Your Honors. John Till representing G.P. Vincent II, LLC. I'd like to reserve five minutes for rebuttal, if it may please the Court. All right. I'll try to help you out, but keep your eye on the clock as well. I understand, Your Honor. We are here today to address the application of race judicata in an environmental matter and in the occurrence of response costs by G.P. Vincent, not any other party's response costs, related to the contamination that was caused during the ownership of Norma Beard and Edgar Beard of the property and during the operation of Edgetec Inc. at the property. We're here on 12b6 dismissal of one of those slices of claims, correct? No, Your Honor. We're here in part, yes, Your Honor. It's a 12b6, but in essence, the motion that was granted dismissed the entire action for all intents and purposes, because although we have a few other defendants in the action, several of them are related to or successors in interest to Edgetec. Because Edgetec was dissolved, certain aspects of it was sold, so those entities are also on hiatus based on the Court's ruling. And I think that was indicated in our application. The question we face is whether you're precluded from bringing those claims, which is what the District Court found. That's correct, Your Honor. Okay. Tell us why. Your Honor, I would like to indicate that I think there are three reasons why. The first reason is there's not an identity of claims. Say that again, please. There is not an identity of claims. The second reason is there's not an identity of parties related to the voluntary dismissal that was the basis of the Court's order that was executed by the parties December of 2010 and entered in July of 2011 by the District Court. The third is there was no final issue or final judgment on the merits. I'm going to address – I think it's important to note up front that Norma Edgard Beards and the Edgetec entities did not file responsive pleading in any of the prior litigations, nor did Edgetec or Edgard Beard ever appear as a party in any of the prior litigations. In fact, Edgetec was not represented by counsel of record in any of the prior litigations. All of this res judicata is based on a voluntary dismissal, i.e. with prejudice, in a case that was not litigated. There was no depositions. There were no discovery. There were no other components related to why this should be a final judgment. What your client wants is the ability to sue entities and individuals who resolved claims concerning the contamination of the property. Is that right? Your Honor, they resolved claims in a settlement that was not judicially approved, which is a public impact to the environment. It is not okay, and the case law would support, the idea that any confidential settlement does not even create a contribution bar. There is no – so the fact that there was no judicial approval of the settlement is very important in this case. Is the answer to my question yes or no? I'm sorry, Your Honor. I thought I was answering your question. No, I'm not saying you're not. What I'd like you to do is start with an answer and then explain. Fair enough, Your Honor. Is what your client seeks is to recover damages from people who have already settled, voluntarily or not, the damage to the property, the environmental damage to the property. I guess, Your Honor, I would say in the largest scheme of the answer is probably yes. Yes? Tell us why. The reason being is because our client, my client, came into the fact to do a redevelopment of the property, to rehab this property that was in default. It was in a receivership. The loan had been defaulted on because of the contamination issues. So your clients knew the property was contaminated when they bought it? Yes, Your Honor. We entered into what's called the Clara Agreement. And that Clara Agreement provides a basis and encourages non-responsible parties to come in and address environmental issues that have been created by other parties. And that is one of the basis that we have asserted. You said that this was a confidential settlement and that it was not judicially approved and that matters to the privity analysis. Did you know of the settlement agreement when you purchased the property? Yes, Your Honor. I also knew that it had not been judicially approved, which is an important component of the analysis. It also was not on record. It doesn't run with the land and it wasn't recorded. And it would have been wiped out by the foreclosure. I'm sorry. Yes, Your Honor. That's what I was asking about. What you're saying is that there was a settlement in personam between parties other than yours and your men bought some land under a mortgage that was entered in 2004 some years before any settlement, before any action, and that his rights come derivative of the foreclosure, not from any rights of the parties who settled their case. Yes, Your Honor. And I think it's important to note that the idea that somehow a settlement could run with the land and impact... You said it wasn't judicially approved. I think what you're saying is that there wasn't any judgment of the court executing a lien against the property. I believe that's to be true, Your Honor. Also, that was in... The settlement was actually in the Mayhew, the Walnut Creek Manor litigation. It was not in the judicial dismissal that we are dealing with today. And it wasn't recorded. And nothing related to the prior litigations was actually recorded. So with regards to why... The Ninth Circuit has created a bright line rule, correct, related to the identity of claims. And claims that arise after the initial filing of the complaint. And the complaint that we're dealing with here is the Mayhew Center complaint. That was filed in approximately 2000... Sorry, let me make sure I get this right. 2009-10, Your Honor. Your Honors. And the important point about that is that many facts have arisen since 2010 related to the property, related to the environmental issues, related to the fact that contamination had continued to be migrated because it was not resolved. Rather than identity, would you discuss your position on the element of privity? Yes, Your Honor. Why isn't G.P. Vinson a successor in interest and taking subject to the global settlement? Well, Your Honor, first of all, the global settlement was not recorded. And so it wasn't entitled. And the other important... But your client knew about it. We knew about it, Your Honor. But remember that we bought the note. So we stood in the shoes of the note holder. So anything that came after the recording of the note, recorded or otherwise, was wiped out. And the note specifically says that Mayhew Center and Mr. Dunnivan did not have the ability... They gave that bundle of sticks. They pulled out one of those bundles of sticks and they gave it to their lender that said you cannot settle an environmental case related to the site and without our consent. So what we have is we have a scope of authority issue, Your Honors, is that we have the... And let me come back to the question on privity, Your Honor, because and I think I didn't quite answer your question. With regards... Did I get it? You said that Vincent took over in the shoes of the mortgagee. And the mortgagee got his rights in 2004. Correct. Years and years before any settlement was entered into by parties foreign to GP Vincent. And also importantly, Your Honor, before the litigations were even filed. Like the first litigation by the neighbor was under 107 and was brought against Mayhew Center. And Mayhew Center was ultimately found to be liable. And therefore, when Mayhew Center was held liable under 107, they filed a 113 contribution claim, which is the only circular claim they could file. Your client still has a claim against Mayhew? Well, Your Honor, we still have a claim against Mayhew, but they went through bankruptcy. That's part of the reason there was such a long lag. You and I are going to get along a lot better if you answer my question and if you have an explanation to then give it. So you can and have proceeded against Mayhew, correct? Yes, Your Honor. In this case, we proceeded it against Mayhew Center. Correct. Now, did your client receive any benefit from the settlement? No, Your Honor. In fact, as far as we're aware, there was actually no significant cleanup of any kind done from the settlement. That's because based on the record that we have now, we know it's not full because this is 12 v. 6. Mayhew didn't complete or even start, as far as I can tell, the restoration of the property, correct? Yes, Your Honor, and in that particular situation, because of Mayhew Center's failure to get done what was needed to get done, the monies that were put into escrow were transferred to the plaintiff in that action as devaluation of property value, essentially, as damages for their response costs under 107 and devaluation of the property. I see that I only have three minutes left. Let me follow up with a question and if necessary, I'll give you a couple of extra minutes on rebuttal. In response to Judge Hawkins' question, you said you have a claim against Mayhew, but you couldn't pursue it at this point because they're in bankruptcy? Your Honor, they, the bankruptcy, we... I don't remember if we have dismissed them or not, Your Honor. They are in bankruptcy. There is nothing there to go after. They don't have insurance. Bankruptcy eventually will end. So are you involved in that bankruptcy litigation in some way? At least you're observing. I'm assuming you're tracking it and trying to figure out how you could be engaged in that process. Your Honor, I believe, and I'm not 100% sure because I didn't look at this recently, is I believe we dismissed Mayhew Center because of the bankruptcy and Dean Donovan as well, because the bankruptcy court said there's nothing left and, you know, you're essentially done. All right. All right. Thank you, counsel. Thank you. Mr. Kleiner. Good morning, Your Honor. Matt Kleiner on behalf of Truck Insurance Exchange, who is also on behalf of the estates for Norma and Edger Beard. Speak right up, if you will. Raise your voice a little bit. Thank you. I will. Thank you. Okay. Yes. No problem. I want to jump right into the final judgment on the merits element of Brett's judicata. The argument was made that there was no final judgment because there was no authority on behalf of Mayhew to enter into a settlement agreement, and therefore the 2004 note holder would not be bound. But whether Mayhew breached its settlement or the terms of its note by not getting approval from the note holder has no ramifications as to Mr. and Mrs. Beard. That's a dispute that needs to be brought against Mayhew for breach of the loan agreement. And the Beards went into this lawsuit, after being brought into the federal lawsuit, settled their responsibility, including the claims against the estate of Mr. Beard. And as part of that settlement, Mayhew and its representatives represented that they had binding authority to enter into a settlement agreement, and that's in the record as F3-ER-521, in section G of the settlement agreement. But the bottom line is that there is an enforceable judgment and an enforceable settlement agreement as it relates to the Beards to satisfy the first element of Brett's judicata. Mr. Kleiner, may I interrupt you for a second? Getting to the bottom line, as you just said a moment ago, as I see it, and tell me where I'm wrong, there was a settlement agreement between persons creating rights in personam between them. There was no judgment against the land. There was no recordation of a judgment against the land. There was no liability created of the land to be sold to remediate. Later, in a separate basis under CERCLA, there's, again, personal liability. Why is Mr. Vincent in any way bound by the settlement between persons other than him? He didn't take the title from Mr. Mayhew. Mr. Mayhew didn't convey anything to him. Mr. Mayhew's title was eliminated by judicial foreclosure. So why is J.P. Vincent in any way bound by an in personam judgment between parties in an action in which he was not a party? Well, first, Your Honor, is that J.P. Vincent went into this deal to purchase this property and to remediate it, knowing full well that there was a settlement agreement in place. That settlement agreement was something that was negotiated. It was a settlement agreement between people other than J.P. Vincent. So they settled it. So what? How is J.P. Vincent bound by the settlement agreement? Tell me that. J.P. Vincent is bound by the settlement agreement because he is in privity with respect to the settlement agreement. That's a conclusion that you draw, that he's in privity, right? Now spell out to me why a party who's not a party to the settlement agreement is in privity with the settlement agreement. Because that agreement was entered into as part of a lawsuit that was filed against Norma Beer. To which J.P. Vincent wasn't a party. Correct? Correct, but they were fully aware of the settlement agreement. So he's fully aware of some of the people who settled there in personam inter sese liabilities, all right? And he's bound by that? The person who has the right to sue under this environmental contamination claim has to be a property owner. That's coincidental. He can't be a third party. His obligation under CERCLA and his right for contribution under Section 113 is created by a federal statute, right? And a condition of him being liable and of having a contribution right is that he is an owner. But it doesn't have anything to do with how he became an owner. If he had taken ownership through adverse possession, do you think that he still would be in privity? Yes, I think he would, Your Honor. And it comes down to the fact that we're dealing with a release. We're not dealing with a covenant that runs with the land. The Beards have paid valuable consideration to resolve all of their liabilities. Against the other parties to the action. But Mr. Vincent had no relation with them? Yeah, but Mr. Vincent later purchased the property knowing that the Beards had been released in full well. And they went ahead and negotiated the deal. They'd been released by other people, but he didn't do any releasing of his obligation under CERCLA. His obligation under CERCLA was independent of anything that happened in the settlement agreement, correct? Correct. But his obligations under CERCLA did not arise until after the Beards had already been released. Well, all right, so they were released by other people. They weren't released by G.P. Vincent. They were released by the former property owners who had the rights that Vincent inherited through the foreclosure. So are you arguing that by purchasing the property, acquiring the property, that G.P. Vincent not only bought the land, they bought the lawsuit and the settlement? I'm arguing that G.P. Vincent purchased the property knowing that there was a settlement, knowing that the Beards had been released, and could not later be sued for the same exact harm, the same exact pollution that they later are trying to, or I guess now are trying to get in this litigation. They couldn't be sued by the parties to the release. You're quite right. But why couldn't they be sued by G.P. Vincent under his CERCLA Section 113 rights? Because he knew that they'd been released by other parties? If that analysis would be correct, there would be no peace of mind for any party settling an environmental claim. There really isn't, as long as you keep buying the property. So any new purchaser of a property would be able to bring a new CERCLA claim? That's right. What's the flip side of that? Is the flip side of that that if we agree with the proposition that G.P. Vincent has nothing to do with the settlement, that every successor purchaser of this property could sue the Beard estate? Is that the flip side? That is, yes, Your Honor. The point I'd like to raise, just in my concluding seconds here, is that Norma Beard was brought into a federal lawsuit over the exact same claims that are at issue in this lawsuit. She participated in that lawsuit, agreed to go to a settlement conference supervised by a magistrate judge where she participated in a four- to five-day settlement conference. A global settlement was reached, which released her and her husband's estate of all liability. And that agreement was not confidential. It was provided to the federal district court judge, who signed an injunction order, and then entered a dismissal with prejudice, which is a final judgment on the merits. This case is simply the rehashing or relitigating of the exact same liability that the Beards have already been released for. And in order to give conclusive effect to a release that a party has entered into through the federal judicial process, this res judicata would have to apply here. I see that I'm out of time, so unless there's further questions, I'll pass it on to co-counsel. Thank you. Mr. Seidel. May it please the court, Edward Seidel for Apelli Etch Tech, Inc., a dissolved California corporation. I'm going to jump into one of the questions that Your Honors had previously asked, and that is whether or not the settlement agreement conferred any benefit on G.P. Vincent, a LLC which was created in 2016 well after the fact. And the answer is actually yes. That settlement agreement, which was incorporated in Judge Wilkins' injunction order and referenced in that injunction order, created an escrow fund to clean up both properties, the neighboring property who initiated the first lawsuit as well. Let me ask you, Mr. Seidel, in an action by CERCLA against G.P. Vincent for remediation, would it be a defense to say there's a settlement of this exact claim among all these parties and therefore CERCLA can't get any money from me? In this instance, the answer would be yes because G.P. Vincent negotiated an immunity deal before it took possession of the property. So it was under its deal with the Regional Water and Quality Control Board. It is immune from such lawsuits, and the neighboring property has already remediated with the funds from the settlement agreement. That immunity is by a local governmental agency. I'm talking about CERCLA Federal. Would that be a bar to the action by CERCLA against G.P. Vincent? So is your question if the neighboring property were to sue G.P. Vincent, would they be barred? No, no, I'm saying if CERCLA says you haven't cleaned up the site and we're after you, Mr. G.P. Vincent, or G.P. Vincent LLC, because you are liable as a present property owner, can G.P. Vincent defend that action by saying there's a settlement agreement between prior owners to remediate this property and therefore I'm not liable? Can he do that? Probably not, right? So probably not because you're posing it as if the federal government sues. Right. They have negotiated their... There's a statutory liability under CERCLA against G.P. Vincent which has nothing to do with any settlement agreement imposing any duty on G.P. Vincent or absolving him of any duty because he was not, or it was not, a member of the parties in the settlement agreement. I would argue that G.P. Vincent would be well covered by his CLARA deal and it would argue such in any such hypothetical lawsuit. Has the federal government, has the EPA or some other federal agency threatened to sue G.P. Vincent? Not that I'm aware of at any time. What I do understand is this case is about more than just the settlement agreement. This case is also about the fact that there was a dismissal with prejudice of the action in which the successor... Sorry, the previous landowner dismissed its identical claims that there was contamination and a cleanup and G.P. Vincent takes the position that because it formed itself later it can run around that order of dismissal by Judge Wilkin without going through the processes of Federal Rule of Sale Procedure 60 which is to set aside any such order because they claim it's invalid because there was a lack of permission from the note holder. That is something that the note holder could have addressed before Judge Wilkin any time in the last decade and has not. This is not how you go about setting aside an order that runs with the land in this instance. How does it run with the land? Because it is a CERCLA court-supervised settlement agreement which I do not necessarily believe is in personam but would run with the land. The Federal Government was part of the settlement agreement? The Federal Court was, so no. There's still a separation of powers in this country and the executive was not a party to the settlement agreement, correct? That's correct. All right. So when you talk about a CERCLA-approved settlement, I don't understand you. The settlement agreement involved all of the parties that were necessary to accomplish the cleanup at the property. And they settled their agreements among themselves in personam, true? Did they enter a judgment against the land? Was there a lien as a result of the judgment? There was no lien. There was only the resulting judgment of dismissal. Of the parties? Of the parties. Right. Okay. Counsel, let me ask you about the settlement agreement because while it purports to be between Norma Beard, this is the privity analysis with regard to EGTEC. Norma Beard did not sign on behalf of EGTEC. So for privity purposes, even if we assume Norma Beard is out, why should EGTEC be out? EGTEC was represented fully by Norma Beard in that process. Norma Beard's liability was alleged by Mayhew Center. She didn't sign on behalf of EGTEC. She paid for the release for EGTEC. EGTEC had no other obligations. And remember that EGTEC is her husband and it is operated by her three sons. She brought them into the settlement conference with Judge Spiro. She paid for the release for EGTEC. She covered their interests entirely. She assumed control of the litigation, and she represented EGTEC's interests when she negotiated the dismissal of that complaint, which was entirely based on EGTEC's alleged contamination in the 1970s and 1980s. Well, I understand that may be the background scene, probably what the parties intended. I just don't know why the settlement was structured this way. I'm not sure that could be part of the record, but it is certainly the case that EGTEC is alleged not to have been a named defendant in the Mayhew Center, yet nevertheless signed that settlement agreement in which they received full releases from all of the parties, including by and between their own mother, Norma Beard. Is the description or record reflecting G.P. Vincent's dealings with the state authority in the record? G.P. Vincent's dealings with the state? Yes. Can you point to that, or if you can't, right off the top of your head? I can't. It is the assessment document that is attached as an exhibit to the G.P. Vincent complaint. Okay. Thank you. Thank you. In analyzing the privity issues in this case, do we apply federal common law or state law, and does it make a difference? In this instance, I do not believe it makes a difference. Whether we apply the law as discussed under Taylor or under Tahoe Sierra, we have a unity of interest. If you're talking about as between Edge Tech and Norma Beard, we have a unity of interest under all traditional methods of non-party privity. But do you have a view as to whether federal common law applies instead of state law? I don't recognize a difference in this instance, so I don't have a view to express. I'm down to 14 seconds. Any other questions, Your Honors? I have no questions. Thank you. All right. Thank you. Let's put four minutes on the clock for rebuttal. Thank you, Your Honors. I wanted to come back real quick on the flip side question that was asked by I'm not sure which one of you. It was me. Okay. The flip side, Your Honor, is that it is true that a successive property owner could continue to sue, but the important distinction is as long under CERCLA 107, as long as they are incurring response costs, if the cleanup is done, there's no response cost to be incurred. Is the cleanup done? No. We're in the process of doing it. Okay. So we can take that out of your question. Correct, Your Honor, but our remediation that we have undertaken will clean up the property, which means that a successive owner wouldn't be incurring response costs. Your client could give up and sell the property to someone else. It is possible. And if they did, if we agree with your position, Norma Beard would be on the hook again. Well, Your Honor, they would either have to sign on to the CLARA agreement, which would give them, as counsel has indicated, immunity, and continue to do the work that's required under the CLARA agreement, or if they did not, then they would be liable under CERCLA from any other party for response costs that were incurred related to the property. And if they were liable under CERCLA for response costs, they would be able to get contribution, including from Ms. Beard. Yes, Your Honor, because as they incur those, if they were subject to a 107 action, here, G.P. Vinson is bringing a 107 action. It is not subject to a 107 action, and that distinction is important because the liability that arose for Mayhew Center was liability from the neighboring property who incurred response costs and then sued under 107. Mayhew Center then turned around and sued Norma Beard only for contribution. And that is what we are dealing with, which is the voluntary dismissal of that case related to Mayhew Center suing Norma Beard. The district court determined that the settlement did not bar and that the Walnut Creek Manor action was not a final judgment with regards to the Beards or with regards to EDGTEC, and that is in a footnote in the court's order, Your Honor, and I don't remember exactly what page. I think it is important to note, though, that the settlement, counsel indicated that the settlement released all the Beards and EDGTEC and the claims between them. It, in fact, does not. So the claims that were released were not by and between Norma Beard or by and between EDGTEC with the other Beards. And, in fact, the insurance carrier was also not released. And CERCLA was not a party to a release, and CERCLA didn't release any rights to anybody. The EPA was not part of this. That is correct, Your Honor. I think it's also very important to note that Mr. Seidel stated at one of the hearings that, and it's in the record, Your Honor, I'll get to the citation in a second, that he did not represent EDGTEC at the time of the prior litigations. He represented Norma Beard, and the importance of that is he's the one that signed the voluntary dismissal on behalf of Norma Beard. That was after the settlement was done. That was after there were issues as to who is Norma Beard, who is EDGTEC, so on and so forth. It's important that, as counsel, he signed that for Norma Beard and Norma Beard only. All right, counsel. You're over time. Thank you very much. Thank you, Your Honor. Thank you, counsel, for your very helpful arguments today. The matter is submitted.
judges: HAWKINS, BEA, NGUYEN